| | | | |
|---|---|---|---|
| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Motion to Dismiss

Defendant Allergan, Inc. ("Allergan") filed a motion to dismiss Relator's Second Amended Complaint ("SAC"). Mot., Dkt. 40. Relator Terrance Barrett ("Barrett") opposed the motion. Opp'n., Dkt. 43. Barrett replied. Reply, Dkt. 44.

For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

Barrett filed his Complaint on February 6, 2018. Dkt. 1. The United States Government declined to intervene on October 24, 2018, and on November 1, 2018, the Court ordered that the complaint be unsealed. Dkt. 18. The initial complaint asserted two claims for relief under the federal False Claims Act ("FCA") and 30 analogous state and local false claim statutes. Dkt. 1. Barrett amended his complaint on August 22, 2018 and again on June 4, 2019. Dkt. 15, 29. The SAC alleges one claim under the FCA and 29 analogous state and local false claim statutes. SAC, Dkt. 29.

Allergan develops, manufactures, and sells pharmaceuticals. SAC, Dkt. 29, ¶ 14. During the time period at issue, Allergan manufactured and sold the prescription drug Botox. Id. at ¶ 15. Barrett was employed as a Regional Sales Manager for Allergan from 2008-2018. Id. at ¶ 11. In order to be reimbursed for Botox, providers must first purchase Botox from Allergan and once they use the product, bill the patient, the Government, or insurers. Id. at ¶ 17. The rate the Government pays is determined by the Average Sales Price ("ASP"), a statutorily defined calculation. Id. at ¶¶ 16-18. Barrett alleges that Allergan is required to include both therapeutic and cosmetic sales in their ASP. Id. at ¶¶ 18-20; 22-23. Manufacturers are also required to report the drug's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
|---|---|---|---|
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

average manufacturers price ("AMP") and "Best Price" to the Government on a quarterly basis. Id. at ¶ 28.

Barrett alleges that Allergan failed to report to the Government the accurate prices for Botox, thereby causing the Government to overpay for the drug. Id. at ¶ 1. Barrett contends that Allergen provided physicians with free products and cash rebate programs which effectively reduced the drug price for private providers, while Allergan failed to report the value of the programs in its price reporting obligations, thereby elevating the price of Botox reported and paid by the Government. Id. at ¶ 3. Allergan is alleged to have provided free Botox through (1) "new patient and provided training programs" in connection with it's breast implant product, Natrelle Gel; (2) bundled deals with Natrelle Gel implants and Juvederm; and (3) condoning abuse of Botox-related programs in response to physician demand including the "Brilliant Distinctions" customer rewards program. Id. at 4. Barrett also alleges that providing reduced-price Botox and Natrelle Gel implants constituted unlawful kickbacks to induce prescriptions. Id. at ¶ 5.

On June 4, 2019, Allergan filed the subject Motion to Dismiss. Mot., Dkt. 40.

## II. Legal Standard

### A. Motion to Dismiss: Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-203 JVS(KESx)                                    Date  9/24/2019

Title  U.S.A. ex rel. Terrance Barrett v. Allergan, Inc.

to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### B. False Claims Act ("FCA")

Under the FCA, 31 U.S.C. § 3729, et seq., any person or entity who "knowingly presents . . . a false or fraudulent claim for payment" to the United States government is liable for civil penalties. 31 U.S.C. § 3729(a)(1)(A); United States ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ., 161 F.3d 533, 535 (9th Cir. 1998). "Knowing" and "knowingly" "(A) mean that a person, with respect to information–(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1). "Congress enacted the [FCA] to 'enhance the Government's ability to recover losses sustained as a result of fraud against the Government.'" United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407, 409 (9th Cir. 1993) (quoting S.Rep. No. 345, 99th Cong., 2d Sess. 1 (1986)). "The FCA allows private individuals, referred to as 'relators,' to bring suit on the Government's behalf against entities that have violated the Act's prohibitions." United States ex rel. Mateski v. Raytheon Co., 816 F.3d 565, 569 (9th Cir. 2016) (citing 31 U.S.C. § 3730(b)(1)). "Such suits are commonly called *qui tam* suits." Id. (citing Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 (2000)).

### C. Allegations of Fraud: Fed. R. Civ. P. 9(b)

Under Fed. R. Civ. P. 9(b), a plaintiff must plead each element of a fraud claim with particularity, i.e., the plaintiff "must set forth more than the neutral facts necessary to identify the transaction." Cooper v. Pickett, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original) (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994)). A fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper, 137 F.3d at 627). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Statements of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-203 JVS(KESx)                                Date  9/24/2019

Title     U.S.A. ex rel. Terrance Barrett v. Allergan, Inc.

time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not.  Id.  Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge.  Id.

### III. DISCUSSION

Allergan moves to dismiss the SAC on grounds that (1) Barrett's claims are barred by the first-to-file rule, thereby divesting this Court of subject matter jurisdiction over the SAC; (2) Barrett's claims are barred by the public disclosure rule, thereby divesting this Court of subject matter jurisdiction over the SAC; and (3) Barrett's allegations do not state a claim on the merits.  (See, Mot., Dkt. 40.)  The Court will address each argument in turn.

#### A.   First-To-File Rule

Once a complaint has been filed for violations of the FCA, a "first-to-file bar" provides that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  The Ninth Circuit "treat[s] the first-to-file bar as jurisdictional."  U.S. ex rel. Hartpence v. Kinetic Concepts, Inc., 792 F.3d 1121, 1130 (9th Cir. 2015); see U.S. ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1186 (9th Cir. 2001) (finding that "the district court had the power to decide *the § 3730(b)(5) jurisdictional challenge*") (emphasis added).

Pursuant to 31 U.S.C. §3730(b)(5), later-filed actions that allege "the same material elements of fraud described in an earlier suit" are barred even if the allegations incorporate "somewhat different details."  Lujan, 243 F.3d at 1189.  "The facts underlying the later-filed complaint need not be 'identical' to those underlying the earlier-filed complaint for the later complaint to be barred."  Hartpence, 792 F.3d at 1130.

Allergan argues that Barrett's claims are barred under the FCA's first-to-file rule because at the time Barrett filed this action, a similar complaint was pending in the United States District Court for the Central District of California, United States ex rel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
|---|---|---|---|
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

Castro v. Allergan, No. 2:16-cv-03883-SVW-PLA (C.D. Cal. June 2, 2016).[1] In Castro, relator claimed that Allergan engaged in a kickback scheme to promote Botox for urology uses by providing physicians with "free goods and services – including Botox, needles and consulting advice – to induce purchases of the product." Castro Compl. ¶ 2. Allergan alleges the Castro action is similar to Barrett's action because they both allege that Allergan provided Botox samples, thereby reducing the price physicians paid for Botox, in order to promote loyalty to the Botox product. Mot., Dkt. 40, ¶¶ 9-10. Allergan further asserts that both complaints allege a direct relationship between product samples and federal reimbursement rates. Id. at ¶ 10. As a result, Allergan concludes that both actions share the same material elements of fraud. Id. at ¶¶ 10-11.

Barrett argues that the earlier case is materially different both because it alleged a different form of fraud and because the facts upon which the allegations are based are different. Specifically, Barrett argues that whereas Castro only alleges a kickback scheme, his complaint alleges a price inflation scheme. Opp'n., Dkt. 43, at 7-8. Barrett also alleges the material facts of the Castro complaint are different from those in the subject action. Id. Barrett notes Castro's focus is on allegations that Allergan used illegal kickbacks in the form of free products and equipment (including free Botox), and a "Temporary Price Allowance Program" to induce physicians to purchase more Botox as part of their therapeutic treatments. Id. at 9. On the other hand, Barrett's claims pertain to whether discounts and cosmetic programs were included in the ASP, and whether Allergan intentionally excluded them to increase Medicare reimbursement rates. Id. at 9. Barrett contends that the evidence required to prove the alleged fraud also differs given that Castro would need to prove kickback allegations without addressing the core of Barrett's allegations – that Allergan fraudulently calculated and reported the Botox ASP by excluding discounts to providers, used the cosmetic program to inflate reported pricing, and failed to appropriately track samples in an attempt to intentionally inflate government reimbursements. Id.

---

[1] The court takes judicial notice of the Complaint filed in United States ex rel. Castro v. Allergan, No. 2:16-cv-03883-SVW-PLA (C.D. Cal. June 2, 2016) [Dkt. 1]. (The Court may take judicial notice of matters in the public record without converting a motion to dismiss into one for summary judgment. See Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1125–26 (9th Cir. 2002)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

Although both complaints discuss Botox samples, Castro's allegations are significantly narrower than those made by Barrett. Namely, Castro alleges that Allergan provided physicians with free Botox samples, imaging equipment, consulting services, meals, advertising, paid physicians consulting fees, and used a discount program to reward physicians by charging them less for products than the AWP in order to induce physicians to prescribe additional Botox to patients for therapeutic purposes. See Castro Compl. ¶¶ 93, 130-136. Barrett's claims are significantly broader, alleging that multiple schemes were used by Allergan that lowered the net cost of Botox for providers without reporting the price reduction to the Government in an effort to inflate Medicare reimbursement rates. Castro addresses allegations of fraudulent ASP reporting only in the context of a "Temporary Price Extension Program" whereby high-volume prescribers were offered price extensions to "offset Medicare's policy of adjusting reimbursement only six months after a price increase takes effect" and a "Quantity Buy in Program" which enabled physicians to buy a short term supply of Botox at dated and lower prices. Castro Compl. ¶¶ 131-33. Thus, not only are the fraudulent schemes alleged by Barrett and Castro different, but so are the material facts underlying the allegations. As a result, the damages resulting from Castro and Barrett are different with Castro resulting in tainted kickback claims and Barrett resulting in broader overpayment claims. Therefore, the Castro action does not bar Barrett's action under the FCA's first-to-file rule.[2]

Barrett's motion to dismiss on this ground is denied.

### B.     Public Disclosure Bar

Allergan next argues that Barrett's claims are barred by the FCA's public disclosure rule. The FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), precludes private parties from bringing "*qui tam* suits when the relevant information has already entered the public domain through certain channels." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 285 (2010). This bar reflects Congress's attempt to find "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." United States ex rel. Devlin v. California, 84 F.3d 358, 362 (9th Cir. 1996) (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649 (D.C. Cir.

---

[2] Allergan's motion as to Barrett's state law claims fail for the same reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-203 JVS(KESx)   Date  9/24/2019

Title  U.S.A. ex rel. Terrance Barrett v. Allergan, Inc.

1994)); see also Seal 1 v. Seal A, 255 F.3d 1154, 1158 (9th Cir. 2001) ("The compensation available to relators, however, encourages parasitic lawsuits in which those with no independent knowledge of fraud use information already available to the government to reap rewards for themselves without exposing any previously unknown fraud."). However, public disclosure does not bar federal courts of subject matter jurisdiction if a relator qualifies as an "original source." United States ex rel. Mateski v. Raytheon Co., 816 F.3d 565, 569 (9th Cir. 2016) (citing Hartpence, 792 F.3d at 1123); see also 31 U.S.C. § 3730(e)(4)(A).

The public disclosure bar is triggered if: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was "public"; and (3) the relator's action is "based upon" the allegations or transactions publicly disclosed. Mateski, 816 F.3d at 570 (quoting Malhotra v. Steinberg, 770 F.3d 853, 858 (9th Cir. 2014)). It is undisputed that the first element of this test is satisfied in this case.

As to the second element, Allergan asserts that Barrett's motion is barred under the public disclosure rule because at the time Barrett filed this action, the relevant information had entered the public domain through a similar action filed in the United States District Court for the District of Nevada, United States ex rel. Damore v. Allergan, Inc., No. 2:11-cv-00253 (D. Nev. Feb. 14, 2011).[3] Mot., Dkt. 40, 12-13. Barrett replies that Damore does not constitute a public disclosure because (1) the allegations span different time periods; (2) they address distinct schemes; and (3) Barrett provided "new key details about the means used to effectuate [the] fraud." Opp'n., Dkt. 43, 13-15. In turn, Allergan contends that although the Damore complaint alleges abuse of samples from 2008 to 2010, Barrett alleges the conduct in the complaint was "ongoing" since it allegedly continued from 2008 to 2018 and therefore the public disclosure applies to all claims at issues. Reply, Dkt. 44, 14.

Similar violations alleged in a prior action that occurred during a different time period may not constitute sufficient public disclosure. See U.S. ex rel. Bly-Magee v. Premo, 470 F.3d 914, 917 (9th Cir. 2006). The public disclosure bar applies "to all claims at issue, including those made after the relevant disclosures" when relator's suit pertains to ongoing conduct and not specific and discrete time periods. Law Project for

---

[3] The court takes judicial notice of the Complaint filed in United States ex rel. Damore v. Allergan, Inc., No. 2:11-cv-00253 (D. Nev. Feb. 14, 2011) [Dkt. 1]. See supra, note 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
|---|---|---|---|
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

Psychiatric Rights ex rel. U.S. v. Matsutani, 454 F. App'x 644, 646 (9th Cir. 2011). Here, the time period at issue in Barrett overlaps in part with the time period in Damore. Damore alleged abuse of Botox samples from 2008 to 2010. Damore Compl. ¶¶ 18, 91. Barrett alleges that the subject conduct occurred from 2011 to at least January 2018. However, the Court notes that Barrett does not cite to discrete time periods alleged in the SAC, even though the SAC appears to imply that at least some of the subject conduct occurred as early as 2009. SAC, Dkt. 29, ¶ 124(a). In any event, the public disclosure element is immaterial here because even if the disclosure was public, Barrett's allegations were not "based upon" a prior public disclosure.

As to the third element, for a relator's allegations to be "based upon" a prior public disclosure, the "publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." Mateski, 816 F.3d at 573. In deciding whether allegations have been publicly disclosed, the Ninth Circuit warns against reading *qui tam* complaints at the highest level of generality. See id. at 578.

Following Matseki's approach "against reading qui tam complaints at only the 'highest level of generality,'" the court finds that Barrett's complaint is not substantially similar to Damore because Barrett's complaint alleges fraud that is different in kind and in degree from the previously disclosed information about Allergen. See Mateski, 816 F.3d at 579. Damore alleged a kickback scheme whereby: (1) physicians were provided with free Botox samples and encouraged to seek federal reimbursements for said products; (2) Allergan funded "patient open houses" and printing expenses and provided consultants to physicians; (3) physicians were directed to withhold using free samples on patients covered by federal payors; (4) physicians were encouraged to administer Botox to multiple patients from a single patient vial while seeking reimbursement for full cost of a single use vial; and (5) substantial rebates were given to physicians while instructing them to seek full cost (non-rebate reflective) reimbursements from federal payors. Damore Compl., 5-8. As a result of the alleged conduct Allergan purportedly prevented the Government "from obtaining the best price for its Botox purchases." Id. at 9. These allegations are different in kind and degree from those offered by Barrett. Barrett alleges that through free product and cash rebate programs Allergan reduced the price of Botox for private providers while failing to include the value of the programs in its ASP and Best Price reports thereby causing the Government to overpay for the products. SAC, Dkt. 29, ¶ 3-5. Comparing Damore, Barrett offers a higher level of detail such as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.  SACV 18-203 JVS(KESx)                                      Date  9/24/2019

Title     U.S.A. ex rel. Terrance Barrett v. Allergan, Inc.

descriptions of the programs by which Allergan allegedly provided free Botox to providers.  See e.g., SAC, Dkt. 29.

Barrett's 93 page complaint details several methods by which Allergan allegedly accomplished its key strategies to compete with less expensive cosmetic toxins by offering free samples to physicians without including them in their price reporting.  SAC, Dkt. 29, ¶ 53.  For example, Barrett describes the "Physician Experience" and "Naïve Patient" programs as some of the largest sample programs.  Id. ¶ 54.  Barrett also alleges details concerning how the marketing department functioned in relation to the samples such as noting that "Allergan would often increase samples in anticipation of upcoming competitive pressure," the samples were distributed through "approximately 35 regional managers" who on average received approximately 10,000 samples," describing in detail how sales teams used the samples to garner favor with their accounts, and describing how regional managers considered "return on investment" as criteria on how to distribute samples.  Id. ¶¶ 56-60.  Barrett also goes on to allege instances where sales representatives expressed concerns about the sampling practice and were dismissed by management as well as management's other involvement in the alleged scheme.  Id. ¶¶ 63-64.  Barrett provides detailed allegations about how the sample programs were not reported on the ASP as evidenced from his personal conversations with Allergan personnel and by comparing the reported Medicare reimbursement rate to Allergan's list price.  Id. ¶¶ 69-84.  Barrett further alleges a kickback scheme related to Natrelle Gel breast implants (Id. ¶¶ 85-107); a scheme to provide Botox samples to providers as compensation for treatment and services provided to company leadership, family, and friends (Id. ¶¶108-116); the use of a "Brilliant Distinctions" program to deliver price reductions to physicians that are not included in the ASP and Best Price calculations (Id. ¶¶117-128); and the offer of Botox and Juviderm "bundled" arrangements to reduce the price of Botox without monitoring or tracking samples and not including such samples in its Best Price and ASP calculations (Id. ¶¶129-136).

A few examples from Barrett's complaint demonstrate that his allegations are more precise than those in Damore.  By way of illustration, Barrett describes specific conversations and instances such as: (1) an employee informed Barrett in April 2017 that the marketing team "often lobbied them to find ways to increase the flow of samples into the market"; (2) in early 2017 a Sales Vice President "took over management of [an] account when he felt that his subordinates were too resistant to maintaining the flow of samples to the account"; (3) a specific doctor ("Dr. A.C.") complained about receiving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-203 JVS(KESx)                                    Date   9/24/2019

Title    U.S.A. ex rel. Terrance Barrett v. Allergan, Inc.

"sufficient sample 'support'"; and (4) a provider told a sales director in May 2017 that this was "how the game works" with regards to taking advantage of an opportune time to demand samples.  SAC, Dkt. 29, ¶ ¶ 61, 64, 66, 67.

The Court turns now to the question of whether Barrett is an "original source."  An "original source" is an individual who either (1) "prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C. § 3730(e)(4)(B).  Allergan relies on two cases outside of the jurisdiction to assert that the dispositive question is whether the Damore allegations were already sufficient to give rise to an inference that Allergan was engaging in alleged wrongdoing.  Mot. 14 (citing United States ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 815 (11th Cir. 2015), United States ex rel. Kraxverger v. Kansas City Power & Light Co., 756 F.3d 1075, 1080 (8th Cir. 2014).  However, the Ninth Circuit made clear in Hartpence that where "an FCA claim has been publicly disclosed before a relator filed his complaint, the relator may bring a qui tam suit if he can show that (1) he has *direct and independent* knowledge of the information on which the allegations in his court-filed complaint are based and (2) he has voluntarily provided the information to the Government before filing his civil action."  Hartpence, 792 F.3d at 1128 (emphasis added).  That Barrett voluntarily provided the information to the Government before filing his action is not in dispute.

The Court finds that Barrett has sufficiently pled that he is an original source because he has direct and independent knowledge of the information that the SAC is based on and has voluntarily provided the information to the Government.  Although Allergan argues that Barrett has not "materially added" to the public information, the Court has already detailed above how the SAC described not only different schemes as those alleged in Damore, but also provided the names of programs by which samples were distributed, management's involvement in the allegations, and Allergan's failure to include the samples in the ASP and Best Price calculations.  Mot. 14, Dkt. 40; see generally, SAC, Dkt. 29.  Thus, Barrett's allegations are clearly independent of and materially add to those in Damore.  Furthermore, Barrett has direct knowledge of his allegations as evidenced by his position as former Regional Sales Manager at Allergan between 2008-2018, his insider knowledge as to how the marketing department worked,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
|---|---|---|---|
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

and eyewitness accounts. See SAC, Dkt. 29, ¶¶ 11, 56-64. For example, Barrett recounts that a "Western Area Director acknowledged that samples lead to price reductions in several conversations with Relator" explaining that "when Botox samples are used as a form of price reduction, it is 'the exact same thing the Plastic Surgery team is doing with the NGTP.'" Id. ¶¶ 73-74. Barrett also alleges that a former national sales account manager "once noted that Allergan was intent on keeping list prices high in order to prop up the ASP reported to CMS." Id. ¶ 76. The SAC lists many other allegations based on personal knowledge and thus the Court concludes that Barrett has direct knowledge of the information the SAC is based upon.

Therefore, the Damore action does not bar Barrett's action under the FCA's public disclosure rule.[4] Barrett's motion to dismiss on this ground is denied.

### C. Failure to State a Claim

Allergan also argues that Barrett fails to state a claim under Fed. R. Civ. P. 9(b) for allegations of fraud. Mot. Dkt. 40, 15. "[T]o commit conduct actionable under the FCA, one must, in some way, falsely assert entitlement to obtain or retain government money or property." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1056 (9th Cir. 2011). "[U]se of representative examples is simply one means of meeting the pleading obligation," but "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998–99 (9th Cir. 2010) (quoting United States ex rel. Grubbs v. Ravikumar Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).

The Court reviews each of the alleged schemes and disagrees that Barrett has failed to meet the standards set forth in Fed. R. Civ. P. 9(b). The complaint offers more than broad allegations lacking supporting detail and provides a strong factual basis for Barrett's claims.

As to Allergan's assertion that Barrett has not alleged with sufficient particularity the prices that Allergan should have submitted under the ASP and Best Price, Barrett alleges that Allergan "could not have accounted for the robust sample programs" because

---

[4] Allergan's motion as to Barrett's state law claims fail for the same reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-203 JVS(KESx) | Date | 9/24/2019 |
|---|---|---|---|
| Title | U.S.A. ex rel. Terrance Barrett v. Allergan, Inc. | | |

they did not keep track of the samples distributed. Opp'n., Dkt. 43, 23. Under that logic, it would have been impossible for Barrett to specify in its complaint what the ASP and Best Price should have been. Allergan also asserts that Barrett failed to specify instances where free samples of Botox were provided to physicians contingent on purchase requirements. Mot. Dkt. 40, 16. However, throughout the SAC there are multiple examples of instances where a direct relationship is alleged between physicians receiving free Botox samples and their threats, implied or explicit, that they would cease using Botox products if they did not receive free samples. See e.g., SAC, Dkt. 40, ¶ 64, 96-97.

Similarly, the court finds that Barrett's kickback claims sufficiently states a claim under Rule 9(b) because these allegations, in the context of the complaint as a whole, adequately allege the who, what, when, where and how of the alleged fraud. While Allergen alleges that Barrett's claims do not plead that Botox samples were "kickbacks to induce '*reimbursable*' sales of Natrelle breast implants," Barrett's complaint notes that "Natrelle is frequently used in government reimbursable breast reconstruction." Mot. Dkt. 40, 23; Opp'n., Dkt. 43, 25. Barrett's state FCA law claims survive for the same reasons.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Allergan's Motion to Dismiss.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |